UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NICHOLAS VONTZ,

          Plaintiff,          Case No. 1:19-cv-665

v.                                         Honorable Janet T. Neff

SHANE JACKSON et al.,

          Defendants.
_____/

## **OPINION**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

### I.      **Factual Allegations**

       Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues

the following LRF officials: Warden Shane Jackson; Deputy Warden B. Smith; Assistant Deputy Warden P. Davis; and Librarians G. Harris and Rex Miller.

Plaintiff alleges that he was denied his right to access the courts from January 1, 2019, through August 20, 2019. According to Plaintiff, under MDOC Policy Directive 05.03.115(L) he was entitled to four hours per week of library time. Plaintiff requested four sessions each week between January 1 and April 20, 2019, but he typically only received one or two 1.5-hour sessions each week. Although Plaintiff asked for additional time during this period, Defendants Harris and Miller denied his requests.

On approximately April 15, 2019, Plaintiff received notification from his attorney that he had 84 days to submit his supplemental brief on appeal and that it was due to the attorney no later than June 26, 2019. Plaintiff submitted library requests to Defendants Miller and Harris on repeated dates between April 17 and April 30, 2019, advising Defendants of his deadlines for filing. Nevertheless, Plaintiff received only one session of 1.5 hours each week during this period.

Plaintiff filed a grievance (#LRF/2019/05/0500/14C) on May 7, 2019, explaining that Defendants Miller and Harris had denied him access to the courts by failing to schedule him with more than one session per week, despite knowing of his upcoming deadline. The grievance was received on May 9, and, on May 23, 2019, Defendant Davis denied the grievance, concluding that no violation of policy had occurred, because Plaintiff had been granted all but three of his library requests during the preceding six weeks. (Ex. E to Compl., ECF No. 1-1, PageID.33.) Plaintiff appealed to Step II. Defendant Jackson denied the grievance on June 17, 2019. The Step-III grievance was denied on July 29, 2019. (Ex. H to Compl., ECF No. 1-1, PageID.40.)

Plaintiff continued to request additional library time. He filed a second grievance (#LRF/2019/05/0570/14E) on May 25, 2019. On June 20, 2019, Defendant Davis found that no

intentional violation had occurred and that Plaintiff had received 19 callouts or 28.5 hours of library time over eight weeks. Davis noted, however, that simultaneous scheduling by the Library Tech and the Librarian had led to conflicts in the schedule, knocking prisoners out of their slots. Defendant Davis, therefore, placed Plaintiff on a repeat callout for 6 hours per week until the end of July, in order to allow Plaintiff to complete his pleadings. (Ex. I to Compl., ECF No. 1-1, PageID.46.) By the time of Davis' decision, however, Plaintiff had reached the deadline for sending his supplemental brief to counsel. Plaintiff claims that he filed an appeal of his grievance to Step II, which was ignored by staff. (*See* Ex. J to Compl., ECF No. 1-1, PageID.48.)

On May 31, 2019, a week before receiving the Step-I decision on his second grievance, Plaintiff filed a third grievance, which was rejected as duplicative. (Ex. F to Compl., ECF No. 1-1, PageID.35.) Plaintiff elected not to appeal the rejection.

According to certain attachments to the complaint, Plaintiff also filed Grievance No. LRF/2019/07/0690/14E on June 23, 2019, in which he complained about the many policy violations that resulted in his not receiving sufficient library time to meet his filing deadlines. (Ex. L to Compl., ECF No. 1-1, PageID.56-58.) In addition, on July 16, 2019, Plaintiff filed Grievance No. LRF/2019/07/00734/11B, complaining about the grievance coordinator's failure to timely respond to his Step-II appeal of his second grievance. (*Id.*, PageID.59.)

Plaintiff contends that Defendants have violated prison policy and deprived him of his right to access the courts. He seeks compensatory and punitive damages.

II.     **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

3

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. Due Process

Plaintiff alleges that Defendants violated prison policy by not giving him at least four hours each week in library time and by not providing him extra library time to meet an important deadline, in violation of MDOC Policy Directive 05.03.115(L) and (O). He also appears to allege that he was denied due process when Defendants did not handle grievances appropriately and did not reach the correct result in their grievance reviews.

Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. As a consequence, Defendants' failure to provide Plaintiff with the number of hours of library time set forth in prison policy does not amount to a due process violation.

Further, Plaintiff has no due process right to file a prison grievance or to have his grievances handled in a particular manner. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Valladolid v. Mich. Dep't of Corr.*, No. 15-1930, 2017 WL 3528221, at *3 (6th Cir. Feb. 14, 2017); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002). Michigan law does not create a liberty interest in the grievance

procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

### B. Supervisory Liability

Plaintiff's allegations against Defendants Jackson, Smith, and Davis fail to state a claim for another reason. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff alleges only that Defendants Jackson, Smith, and Davis either failed to properly supervise their subordinates or failed to resolve his grievances in the way Plaintiff believes was appropriate. Such allegations do not demonstrate that they engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendants Jackson, Smith, and Davis for this additional reason.

C. Access to the Courts

Plaintiff contends that Defendants Harris and Miller, by not providing him sufficient library time, deprived him of his right to access the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating

7

> capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff alleges that he was prevented from filing a supplemental brief on appeal, because he did not receive a sufficient amount of law-library time. Plaintiff does not contend that Defendants Harris and Miller denied him all access to the library. Instead, he bases his claim on not having received the full amount of time set forth in the policy directives and the complexity of the issues he sought to raise, including competency, evidentiary errors, and ineffective assistance of counsel. Plaintiff does not dispute Defendant Davis' conclusion that, during Plaintiff's period of need, "the eight weeks since 4/28/19, the Grievant has had 19 Law Library callouts, or 28.5 hours in the Law Library, which works out to 2.375 callouts or just over 3.5 hours per week." (Ex. I to Compl., ECF No. 1-1, PageID.46.) Thus, Plaintiff does not deny that he received a substantial amount of library time during the period, even if he did not consider the time to be sufficient to adequately brief his supplemental claims. Review of the docket sheet for the Michigan Court of

Appeals demonstrates that no supplemental brief was filed in the action. *See* Mich. Ct. App. Electronic Docket Sheet for *People v. Vontz*, No. 346473, https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=346473&CourtType_CaseNumber=2 (last visited October 3, 2019).

While Plaintiff may have preferred additional library time to prepare his supplemental brief on appeal, he utterly fails to demonstrate that he could not have submitted a supplemental brief on appeal, based on the 28.5 hours of library time he was granted. "'[R]estricted access to the law library is not per se denial of access to the courts[;] . . . it is but one factor in a totality of factors bearing on the inmate['s] access to the courts which should be considered.'" *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985) (quoting *Twyman v. Crisp*, 584 F.2d 352, 357 (10th Cir. 1978) (internal quotations omitted)). Here, Plaintiff received a substantial amount of library time—just less time that Plaintiff believed was necessary to produce the quality of brief he wanted to file. *Compare Bennett v. Mohr*, No. 2:14-cv-1450, 2017 WL 3053810, at *3 (S.D. Ohio July 19, 2017) (holding that plaintiff's access to the law library on 258 days of the one-year limitations period did not support a conclusion that limitations on law-library access interfered with the plaintiff's ability to file a habeas petition), *with Colvin v. Schaublin*, 31 F. App'x 170, 172 (6th Cir. 2002) (concluding that allegations that the plaintiff had only five or six hours of library time, preventing him from preparing a motion, were sufficient to state a claim). The mere fact that Plaintiff elected not to submit a supplemental brief after receiving 28.5 hours of library time does not itself demonstrate actual injury. Plaintiff's allegations therefore fall short of demonstrating that Defendants actually hindered the filing of the supplemental brief.

Moreover, a prisoner who is represented by counsel has no freestanding right to access a jail or prison law library. "[P]rison law libraries and legal assistance programs are not

9

ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825). An inmate's right of access to the courts is fully protected if he is represented by counsel. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983). *Cf. United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) (defendant's waiver of right to court-appointed counsel and decision to represent self in defense of criminal prosecution constituted waiver of right of access to law library). Plaintiff was represented by counsel in his criminal appeal. His right of access to the courts was therefore adequately protected.

### III. Pending Motion

Plaintiff has requested the appointment of counsel. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court carefully considered these factors and determined that the assistance of counsel was not necessary to the

proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 3) is therefore **DENIED**.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The court also will deny Plaintiff's motion to appoint counsel.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   October 10, 2019                             /s/ Janet T. Neff
                                                                                      Janet T. Neff
                                                                                      United States District Judge